(February 2, 1893.)

## STOCKTON v. HERRON.

[32 Pac. 257.]

EJECTMENT—SPECIFIC PERFORMANCE.—To entitle a defendant in an action of ejectment to relief by way of specific performance, his answer or cross-complaint must show such a contract or agreement as would sustain a bill in equity for specific performance.

PRACTICE—UNILATERAL CONTRACT.—An averment in an answer seeking affirmation by specific performance in ejectment, alleging a contract entirely unilateral, without time, terms or considerations, or conditions, is bad on demurrer.

(Syllabus by the court.)

APPEAL from District Court, Elmore County.

H. W. Weir, for Appellant.

"An equitable defense, interposed in an action of ejectment, should contain, in substance, the elements of a bill in equity; and that its sufficiency, other than as to mere form, is to be determined by the application of the rules observed in courts of equity, when relief is granted." (*Kentfield v. Hays,* 57 Cal. 409; *Miller v. Fulton,* 47 Cal. 147; *McCauley v. Fulton,* 44 Cal. 362; *Bruck v. Tucker,* 42 Cal. 352; *Milton v. Lawler,* 52 Cal. 405; *Arguello v. Edinger,* 10 Cal. 150.) "The complaint, in a cross-action, ought to be such as would be maintainable in a direct action on the equity side of the court." (*Collins v. Bartlett,* 44 Cal. 371; *Krechbaum v. Milton,* 49 Cal. 50; *Brodrib v. Brodrib,* 56 Cal. 566.) "While it is conceded that under the system of code pleadings an equitable defense may be set up in an action of ejectment, it is also well settled that such a defense must contain all the essentials of a bill in equity, and the issue thus made up is triable by the court without a jury as an equitable issue." (*Kahn v. Old Telegraph Min. Co.,* 2 Utah, 174-195; *Whittier v. Stege,* 61 Cal. 238.) An answer in ejectment, setting up an equitable defense, is in the nature of a bill in equity, and must contain its essential averments. The defendant then becomes an actor with respect to the matter alleged by him, and his defense must be of such a character as may be ripened by the decree of the court into

a legal right to the premises. (*Estrada v. Murphy*, 19 Cal. 249.) If a defendant in an action of ejectment desires to avail himself of an equitable defense as a bar, he must set it up in his answer with the same particularity which is observed in a bill in equity. (*Downer v. Smith*, 24 Cal. 114) To entitle a party to a decree for specific performance the contract must *inter alia* be complete, certain, clear and unambiguous in all its terms and provisions. (2 Story's Equity, sec. 764; Pomeroy's Specific Performance, sec. 148.) The equitable defense should be first passed upon by the court; and it is irregular to submit to the jury all the legal and equitable defenses together. (*Lestrade v. Barth*, 19 Cal. 660.) The court, and not the jury, must pass upon the equitable title set up in the answer; it must be sufficiently pleaded to warrant the court in granting a decree, which will stop the further prosecution of the case. (*Downer v. Smith*, 24 Cal. 114; *Badley v. Ferguson*, 30 Cal. 512; *Martin v. Zellerbach*, 38 Cal. 300, 99 Am. Dec. 365; *Brodrib v. Brodrib*, 56 Cal. 563; *Kentfield v. Hays*, 57 Cal. 411; *Miller v. Fulton*, 47 Cal. 147; *McCauley v. Fulton*, 44 Cal. 362; *Bruck v. Tucker*, 42 Cal. 352; *Milton v. Lawler*, 52 Cal. 405.)

J. W. Badger, for Respondent.

Where a pleading alleges an agreement to have been entered into by parties, but does not aver whether it was verbal or in writing, the presumption on demurrer is that it was in writing. (*Brennan v. Ford*, 46 Cal. 7.) Under our constitution all cases and issues of fact are triable to a jury. (Idaho Const., p. 6, art. 1, sec. 7; p. 19, art. 5, sec. 1.) It is sufficient to state facts showing the duty from which the law implies the promise and conditions. (1 Field's Lawyer's Brief, p. 63, sec. 64; *Fallon v. Sherwood*, 17 N. Y. 227; *De la Guerre v. Newhall*, 55 Cal. 21; *Wilkins v. Stidger*, 22 Cal. 231, 83 Am. Dec. 64; *Merritt v. Glidden*, 39 Cal. 559, 2 Am. Rep. 479; *Green v. Gilbert*, 21 Wis. 395; *Stout v. St. Louis etc. Co.*, 52 Mo. 342; *People v. Ryder*, 12 N. Y. 433; *White v. Lyons*, 42 Cal. 279; *Horn v. Ludington*, 28 Wis. 81.) A memorandum imperfect because not indicating the land sold or terms given may be supported by acts of part performance (or by possession), which show

what was actually intended. (2 Reed on Statutes of Fraud, pp. 188, 189, sec. 560; *Amer v. Bigelow,* 3 McAr. 449.) An oral contract for the sale of land may be validated by part performance. (2 Reed on Statutes of Fraud, ft. pp. 188, 189, sec. 560; *Sykes v. Bates,* 26 Iowa, 521.) The appellant must show affirmative error. Every presumption is in favor of the judgment below. (*People v. Bert,* 39 Cal. 691; *Brown v. Kefield,* 50 Cal. 129; *People v. Smith,* 57 Cal. 131; *Baldwin v. Barnheimer,* 48 Cal. 434; *People v. Gilbert,* 60 Cal. 108, 9 Pac. C. L. J. 90.)

HUSTON, C. J.—Plaintiff brought his action of ejectment against defendant, to recover possession of certain real estate situate in the town of Glen's Ferry, Elmore county, Idaho, described in the complaint. Complaint alleges title in plaintiff, ouster by defendant, and value of rents, etc., and prays judgment. A demurrer was filed to complaint, which was overruled, and the defendant then filed answer. The answer, after denying title of plaintiff and ouster, proceeds to set up the following as a defense, claiming affirmative relief thereunder: "That on or about the —— day of July, 1888, a contract was made and entered into by and between plaintiff and defendant, whereby plaintiff contracted and agreed to convey, sell, transfer unto this defendant all of plaintiff's right, title and interest in and to all the following described real estate, to wit: One lot fronting twenty-five feet on Idaho avenue, and extending one hundred and forty feet, same width, back to an alley, being lot No. 18, in block 21 in plan of lots of Glen's Ferry, laid out by the said plaintiff, and surveyed by Sonnenkalb; one lot adjoining the above fronting twenty-five feet on same avenue, and extending back, same width, one hundred and forty feet to the aforesaid alley, and numbered lot 19 in the aforesaid block 21, and adjoining the lot above described. Also a certain strip of ground fronting five feet on the aforesaid Idaho avenue, and extending back, same width, one hundred and forty feet, to the aforesaid alley, being part of lot 17, and adjoining the aforesaid lot No. 18. Also a certain other lot No. 10, in block 21, in the aforesaid survey and plan

584   STOCKTON *v.* HERRON.  [Sup. Ct.

Opinion of the Court—Huston, C. J.

of lots, and being twenty-five feet front by one hundred and forty feet, same width, back. Also two other lots Nos. 5 and 6, in block 20 of the aforesaid plan of lots, each being twenty-five feet front, and extending back, same width, one hundred and forty feet. That at all times defendant has been, and now is, ready, willing and anxious to fulfill and perform his part of said contract; that plaintiff fails and refuses to perform his part of said contract. 2. That afterward, to wit, on or about the —— day of ————, 1888, defendant, relying on the said contract and the promises of plaintiff, and with the full knowledge and consent of plaintiff, erected or caused to be erected the following buildings on said land, to wit: Two plank frame buildings, one ten by twenty feet, one story, and the other twenty by sixty feet, one story high, situated on lot No. 19, in the aforesaid block 21; one plank frame house, fourteen by twenty feet, one story high, situated on lot No. 10, in block 21, of the town of Glen's Ferry; one plank frame house, fourteen by twenty feet, one story high, on lots 5 and 6. in block 20, in said town of Glen's Ferry, in Elmore county, state of Idaho. That defendant is the legal and actual owner and holder of all said buildings, possessed and entitled to the possession of the same. 3. That the value of the rents and profits of said lots, or any part thereof, without said buildings, is nothing. Wherefore, defendant prays that it be adjudged and decreed by this honorable court that defendant is entitled to the possession of each and all of said lots, and is the just and legal owner of each and all of said buildings situated thereon, and that defendant have judgment for the costs of this action, and for general relief."

Plaintiff filed the following demurrer to so much of defendant's answer as attempted to set up affirmative matter: "1. That said subdivisions of the answer are ambiguous, uncertain and indefinite in this, to wit, that the alleged contract of purchase of the land in dispute does not give date, price, terms of payment, nor when deed of conveyance was to be made, nor whether the alleged contract was by writing or parol. 2. That the said first, second and third subdivisions of the answer which set up affirmative matter do not state facts suffi-

cient to constitute a defense." This demurrer was overruled by the court, which then proceeded to the trial of the case before a jury.

The evidence seems to establish the following facts: Sometime prior to the year 1888, the plaintiff made entry of one hundred and sixty acres of land now comprising a part of the site of the town of Glen's Ferry, Elmore county, under the homestead laws of the United States. Before he had made his final proof under said entry, defendant proposed to him to erect certain buildings upon a portion of said tract. Plaintiff, not yet having made his final proof under his homestead entry, did not consider himself in a position to make any sale or disposition of any portion of the land included in said entry, but permitted defendant to go on and erect certain buildings thereon, with the understanding that when plaintiff got his patent he would do what was right by defendant. Defendant erected the buildings mentioned in paragraph 2 of the second defense in his answer. That under such a state of facts the defendant would be entitled to relief in a court of equity needs neither argument or authority to establish. But in seeking that relief in a court some little regard must be had to the rules which govern the practice in said courts.

That portion of the answer of defendants which attempts to set up a claim for affirmative relief by specific performance of contract is entirely insufficient to support such a claim. The contract set up, or attempted to be set up, is no contract under any rule of law or equity; especially is it not such a contract as would support a bill for specific performance. The demurrer of plaintiff to that portion of defendant's answer which attempts to allege an affirmative defense should have been sustained. The trial of the cause seems to have been a sort of "go-as-you-please" proceeding. To say that there is a palpable variance between the pleadings and the proofs is putting it altogether too mild. There seems to have been a complete abandonment of the pleadings in the introduction of the evidence.

The defendant testified (transcript, folio 82): "I never paid Stockton for the ground. I claimed the ground on the

contract I had with Stockton. I had a contract with Stockton, that if I built on that ground he would do the good part by me in case he got the title. I had never paid him anything. Q. Did you ever offer to pay him anything? A. I have not myself to him direct. . . . . . I have never asked him for a deed. I have never said anything to him about a deed." At folio 86 of the transcript, defendant, in answer to the question, "What were you to pay for the lots—how much?" says: "There was no lots talked about. I was to pay, as he told me, a reasonable—that he would do the fair thing by me; there was no price fixed. He said he could not fix any price."

The wife of defendant, who seems to have been quite an active participant in the transactions involved in this litigation, and who by her testimony, it seems, had, by authority, and at the request of her husband, made frequent attempts to come to a settlement with plaintiff in regard to the ground in question, testifies as follows: "I do not know how much it is, nor how many lots, because there was no lots on there but sagebrush and rocks, and we built as we could, and thought Stockton would sell to us when he got the title. . . . . My husband had no contract with him to buy the land. I don't think he had a contract—only he would do right by him is all the contract, I guess, there was between them. He had his word of honor, I guess. That is all; we do not claim the land now."

Some evidence was offered as to the cost of the buildings upon the land, but no evidence was offered as to the value of the land. At the close of the evidence the court, upon request of the plaintiff, gave the following instruction to the jury: "That under the evidence the plaintiff is entitled to a verdict in his favor, for the property described in the plaintiff's complaint"; but any "flattering unction" the plaintiff may have "laid to his soul" on account of this instruction was suddenly and rudely dispelled by the several pages of instructions thereafter given by the court, upon its own motion and at the request of defendant. Most, if not all, of the instructions given by the court correctly state the law, but the difficulty is, there is nothing whatever in the pleadings to call for or warrant any of them, except the one given as above stated, at the request of

plaintiff, and the further instruction that "the evidence established beyond controversy that the title to the land was in the plaintiff, Stockton." We do not deem it necessary to further discuss or consider the assignments of error in the record, as there is little probability of their recurrence on another trial.

The judgment of the district court is reversed and the cause remanded for a new trial.

Morgan and Sullivan, JJ., concur.